UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Elizabeth White,

                              Plaintiff,                       **Hon. Hugh B. Scott**

                                                        03CV331 Consent

                                v.                                Decision
                                                                       &amp;
                                                                       Order


Jack Lambert et al.,
                              Defendant.
_____

      Before the Court is the defendantS' motion for summary judgment (Docket No. 18).


**Background**

      The plaintiff, Elizabeth White, brings this case pursuant to 42 U.S.C. §1983 asserting that she was subjected to excessive force when she was arrested on January 17, 2003 in violation of her Fourth Amendment rights.

      Many of the relevant facts are undisputed. On January 17, 2003, the plaintiff and another individual named "Dante" agreed to drive in his vehicle to Rochester, New York to purchase crack cocaine. Unbeknownst to the plaintiff, "Dante" was acting as a confidential informant for the government, and was wearing audio surveillance equipment at the time. (Docket No. 18, Exhibit D and E). The two drove to the "S & T Lounge," where the plaintiff purchased two bags of crack cocaine.  Detective Steve Lambert ("Lambert") kept the pair under surveillance at this

time. Via audio surveillance, it was learned that the plaintiff gave "Dante" the two bags of crack cocaine in exchange for marked cash that the defendants had provided to Dante for use in the buy. The plaintiff and "Dante" then proceeded to drive to "Wade's" grocery store, where the plaintiff used the marked money to purchase groceries. The marked money was recovered from the store on that same night. Id.

At her deposition on August 25, 2004, the plaintiff admitted to purchasing drugs for others (as well as herself in the past). (Docket No. 18, Exhibit F at 32-37). Detective Lambert followed their vehicle from "S & T Lounge" to "Wade's" grocery store. The plaintiff testified that she observed an undercover officer behind her in the store. (Docket No. 18, Exhibit F at 37). The officer then followed the plaintiff and "Dante" to the plaintiff's niece's house, "Tasha," where they stayed a few minutes and then began in route back to the plaintiff's trailer home in Farmington.

Sergeant Michael Colacino, Officer Gretchen Parsons, Dean Spychalski and Detective Scott Kadien were already at the plaintiff's trailer home in Farmington, awaiting her return from Rochester. Detective Lambert met them there. Once the plaintiff and "Dante" arrived, and after she exited the vehicle, Officer Spychalski and Detective Kadien approached the plaintiff and informed her that she was under arrest.[1] The confidential informant was also taken into custody at that time. The defendants acknowledge that in executing the arrest, the plaintiff was taken to

---

[1] Sergeant Colacino testified that he was familiar with White prior to January 17, 2003, that she was known to the members of the narcotics division and was out on bail from a prior narcotics related arrest at the time of her arrest on the charges underlying this action. (Docket No. 18-2, Exhibit D at ¶ 3).

the ground by surprise after being advised that they were police officers and that she was under arrest to prevent her from having the ability to discard evidence. (Docket No. 18 at ¶ 13).

The arresting officers conducted a search of the confidential informant and recovered the two bags of suspected crack cocaine. The plaintiff was taken by Detective Lambert and Officer Parsons to the Ontario County Sheriff's Office, where a strip search was conducted. She was then transported back to the police station for processing. While in the booking area, Detective Lambert and Officer Parsons saw what appeared to be a baggie of crack cocaine in the left corner of her mouth. According to Detective Lambert, he attempted to check Ms. White's mouth, but she refused to allow him to do so. He then placed his finger and thumb on the plaintiff's face and held her cheeks together to keep her from swallowing what was in her mouth. After a brief time, the plaintiff was able to swallow the baggie in her mouth. The plaintiff then allowed Detective Lambert to inspect her mouth, which was empty at that time. (Docket No. 18-2, Exhibit E at ¶ 17-18).

Following the search of her mouth, the plaintiff did claim that her mouth hurt. According to Detective Lambert, he asked White if she needed medical care but she refused. (Id. at ¶ 19).

In her complaint, the plaintiff alleges that she was "tackled" by the police when she was arrested. She claims that she suffered a bruised rib, a knot on her head, and that one of her teeth was knocked out. White also alleges that Detective Lambert used excessive force squeezing her face, leaving marks on her face and cuts on the inside of her mouth.[2]   White asserts that she was

---

[2]   White denies that she had drugs in her mouth. (Docket No. 21 at page F).

given pain pills at the Ontario County Jail and that she cried for two weeks before she was taken to the hospital because of her bruised rib. (Docket No. 1)[3]

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.  See <u>Trans Sport, Inc. v. Starter Sportswear, Inc.</u>, 964 F. 2d 186, 188 (2nd Cir. 1992) citing <u>Bryant  v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).  The court must draw all reasonable inferences in favor of the non-moving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party. See <u>Taggart v. Time Inc.</u>, 924 F.2d 43, 46 (2d Cir.1991); <u>Howley v. Town of Stratford</u>, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." <u>Lendino v. Trans Union Credit Information</u>, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

---

[3]   White also asserts that her due process rights were violated at the time of her arrest and that she was "set-up" by the police.  The plaintiff asserts that she was never offered a plea deal of one to three years, but only five to ten years.  In her complaint, she asks "why can't we try to come to some type of understanding – 1-3 years and ½ of the money because of [her] medical bills." (Docket No. 1 at page 7).  Because plaintiff's conviction of the underlying charges has not been overturned, the Court cannot entertain claims attacking her conviction in the instant §1983 action. <u>Heck v. Humphrey</u>, 512 U.S. 477, 489 (1994) (holding that a plaintiff requesting relief under § 1983 had no cause of action "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus").

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." Trans Sport, supra, 964 F.2d at 188, quoting Bryant v. Maffucci, supra. If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the non-moving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2nd Cir. 1992), citing Dusanenko v. Maloney, 726 F.2d 82 (2nd Cir. 1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2nd Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Excessive Force Claim**

The plaintiff asserts that excessive force was used upon her when she was arrested. Because this case arises in the context of an arrest, it is governed by the Fourth Amendment "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 394-95 (1989); Nimely v. City of New York, 414 F.3d 381, 390 (2d. Cir. 2005); *see also* Brown v. Doe, 2 F.3d 1236, 1242 n. 1 (2d Cir.1993) ("Where ... the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the

protections of the Fourth Amendment. The Due Process Clause governs claims arising in the pre-trial detention context. After conviction, the Eighth Amendment serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified." (internal citations and quotation marks omitted)).

A Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment" Id. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)), In Maxwell v. City of New York, 380 F.3d 106, 108 (2d. Cir. 2004) the Second Circuit vacated the grant of summary judgment by the District Court where the plaintiff had alleged that during the course of being arrested, a police officer shoved the plaintiff causing her head to hit the partition between the front and back seat in the police car.  The Court reasoned that the Second Circuit had "permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, "yanked" her, and threw her up against a car, causing only bruising" Maxwell, 380 F.3d. at 108 citing Robison v. Via, 821 F.2d 913, 924-25 (2d Cir.1987).  The District Court in Maxwell had also expressed the view that Maxwell's injury was insufficiently serious, stating: "That Maxwell allegedly scraped her head when being shoved into the car is not sufficient for any reasonable jury to find an excessive force claim in this case--minor scrapes, bumps or bruises potentially could occur, often unintended, during any arrest, and an arresting officer cannot be held unremittingly liable for every such incident." Maxwell, 380 F.3d at 109.  The Second Circuit held, however, that the "use of force in

making the arrest was sufficient to send pain into her arm and lower back and leave her with a post-concussive syndrome" and thus, raised a sufficient claim to be presented to a jury. Maxwell, 380 F.3d at 109.  In the instant case, the plaintiff claims that seven officers were involved[4] in her arrest even though she does not have a violent history and there is no allegation by the defendants that the plaintiff attempted to resist being arrested in any way.  She asserts that she was knocked to the ground; that she lost a tooth, suffered bruised ribs, and received a knot on her head "that the doctor's are still not sure about." (Docket No. 21 at pages A-F).

The defendants cite to Lennon v. Miller, 66 F.3d. 416 (2d. Cir. 1995) in support of the proposition that summary judgment is warranted in this case. In Lennon, the plaintiff refused to exit her car after the officers instructed her to do so to effectuate an arrest.  Instead, the plaintiff attempted to start the car engine, presumably to attempt to escape.  At that point one of the officers broke the car window, reached in , pulled her hand off the ignition, grabbed her by the neck, shoulder, right arm and hand to forcibly remove her from the car so that she could be placed under arrest.  Under the circumstances of that case, the Second Circuit held that the force used was reasonable to effectuate the arrest warranting summary judgment as a matter of law. Lennon, 66 F.3d. at 426.   Lennon is easily distinguished from the instant case inasmuch as there is no allegation that the plaintiff attempted to escape or resist arrest in any manner.  Indeed, the defendants acknowledge that the plaintiff was surrounded as she exited her vehicle and taken down to the ground "***by surprise***." (Docket No. 18 at ¶ 13).

---

[4] The defendants assert that only five officers were present.

A question exists as to whether more force than was necessary was used to effectuate the plaintiff's arrest.  Questions also exist regarding the extent of any injuries suffered by the plaintiff at the time of her arrest.  If the plaintiff's version of the facts were proven true, a jury might find that such conduct might not have been objectively reasonable under the circumstances present.  In light of <u>Maxwell</u> and <u>Robison</u>, the Court finds that questions of fact as to the extent of force used to effectuate White's arrest preclude the entry of summary judgment with respect to the plaintiff's Fourth Amendment Claim.

**Qaulified Immunity**

The defendant police officers allege that they are entitled to qualified immunity.  In <u>Loria v. Gorman</u>, 306 F.3d 1271, 1281 (2d. Cir. 2002), the Second Circuit placed the qualified immunity doctrine in the following context:

> Qualified immunity strikes a balance between the need to provide a means for the vindication of constitutional guarantees and the societal costs that inhere in litigation against public officials, including "the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.' "... It does so by "shield[ing them] from liability for civil damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were 'clearly established' at the time." ... Qualified immunity is more than a simple defense--it is "an entitlement not to stand trial or face the other burdens of litigation, ... an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."

<u>Loria</u>, 306 F.3d. at 1281.

The Supreme Court has stated the test for qualified immunity in situations such as the instant case as follows: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts use a two prong-test to determine whether a law enforcement officer is entitled to qualified immunity. First, the court considers whether the facts, taken in the light most favorable to the plaintiff, establish that the defendant officer's conduct violated the plaintiff's constitutional rights. Saucier v. Katz, 533 U.S. 194, 200-01(2001). Assuming that a plaintiff's constitutional rights were violated, the court must then consider whether such constitutional rights were "clearly established." Id. at 201-02.

It is well established that "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." Saucier, 533 U.S. at 201-02 (citing Graham v. Connor, 490 U.S. 386 (1989)). However, qualified immunity analysis requires more than identifying the generalized constitutional protection; the law must be "clearly established in a more particularized sense," Kerman v. City of New York, 261 F.3d 229, 236 (2d. Cir. 2001), that is, "in the specific context of the case." Saucier, 533 U.S. at 201. The Supreme Court has made it clear that even officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection "from the sometimes hazy border between excessive and acceptable force." Id. at 206. The relevant inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202; see Loria, 306 F.3d at 1286 ("Said differently, ... we analyze the objective reasonableness of the officer's belief in the lawfulness of his actions."); *see also* Hope v. Pelzer,

9

536 U.S. 730, 741 (2002) (explaining that "the salient question" is whether the state of the law at the time of the violation gave officers "fair warning"). Thus, as the Supreme Court has pointed out, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Saucier, 533 U.S. at 202 quoting Malley v. Briggs, 475 U.S. 335, 341 (1986).

However, in the instant case, the respective parties dispute the amount of force used, and thus, the reasonableness of the use of that force to effectuate the plaintiff's arrest. The plaintiff asserts that she was knocked down to the ground in a manner that resulted in bruised ribs, a bump on the head and a lost tooth. The defendants allege that she was "guided" to the ground and was not injured in the process. Although there does not appear to be a dispute that the plaintiff was brought to a hospital as some point after her arrest (Docket No. 18 at ¶ 24), the parties dispute the reason why the plaintiff was brought to the hospital. The plaintiff asserts that the hospital visit was directly related to the injuries she obtained during arrest. The defendants contend that she was hospitalized after she was incarcerated at Bedford Hills due to a work related injury. Significantly, absent from the record are any medical records relating to the plaintiff which might corroborate or refute the nature of the injuries she allegedly sustained during the arrest. Thus, questions of fact exist as to the veracity of the plaintiff's claims that she was injured during the arrest, and that she was provided pain medication at the Ontario County Jail or the Bedford Hill Correctional Facility relating to those injuries. Under the circumstances, it may have been reasonable to "guide" the plaintiff to the ground to effectuate the arrest, but unreasonable to "tackle" the plaintiff in such a manner as to cause the purported rib, head and dental injuries alleged by the plaintiff. Inasmuch as the evidence before the Court does not conclusively resolve the dispute, questions of fact exist with respect to these issues.

These questions of fact preclude the entry of summary judgment with respect to the defendants' assertion of qualified immunity at this time. "Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." Curry v. City of Syracuse, 316 F.3d 324, 334 (2d. Cir. 2003) citing Mickle v. Morin, 297 F.3d 114, 122 (2d Cir.2002).

Based on the above, the defendants' motion for summary judgment based upon the assertion of qualified immunity is denied without prejudice.

**Medical Attention**

Read liberally as the Court must a *pro se* pleading, the Complaint in this matter also purports to state a claim that the plaintiff's Eighth Amendment rights were violated in that she did not receive adequate medical attention resulting from the January 17, 2003 incident. She claims that she requested medical attention, but was denied medical attention for two weeks. (Docket No. 1). The defendants did not address this claim in the instant motion. Therefore, this claim remains pending in addition to the excessive force claim discussed above.

**Conclusion**

Based on the above, the defendants' motion for summary judgment is denied. A status conference shall take place in this case on November 8, 2005 at 3:00 pm before the undersigned.

11

Counsel for the defendants shall make arrangements to ensure that the plaintiff is provided with access to a telephone for purposes of the conference.

    SO ORDERED.

s/ Hon. Hugh B. Scott<br>United States Magistrate Judge

Buffalo, New York
September 28, 2005